22-1152 Valdez v. Motyka. We do have, you're staying here. I'm sorry. Okay. Oh, I see. You're ordering the first, you're ordering second. Both might pay great to figure that out. Mr. Ankeny? Yes, Your Honor. You may proceed. Good morning, Your Honors, and may it please the Court. My name is Clayton Ankeny, and I will be arguing this appeal on behalf of the appellants, Denver and Sergeant Motyka. After trial, Mr. Valdez sought nearly $1.3 million in attorney fees and nearly $37,000 in costs. The District Court awarded Mr. Valdez 87.5% of the requested fee award and 50% of the requested costs. The fee award should be vacated because the District Court improperly concluded the hourly rates for 12 timekeepers were reasonable, it failed to independently determine the reasonable number of hours expended for each timekeeper, and it failed to provide a reasonably specific explanation for each aspect of its fee award. The District Court began its fee determination by addressing the hourly rate component of the lodestar figure and improperly concluding the hourly rates sought by 12 timekeepers were reasonable. The District Court abused its discretion in three ways. First, it failed to address each timekeeper's skill and experience. Second, it provided only a conclusory explanation for the rates awarded. And three, it awarded rates to the attorneys based on the evidence of market rate for more experienced civil rights litigators without any rational evidentiary base for doing so. Here, the District Court failed to address the rates for seven timekeepers at all. Instead, it only provided a conclusory explanation for the rates awarded to Mr. Valdez's attorneys. The District Court merely concluded that, quote, based on the arguments supporting documentation and case law, unquote, the rates were reasonable for civil rights attorneys of comparable skill and experience. The Tenth Circuit has previously found a District Court's similar conclusory statement to be insufficient. In Ellis, the District Court determined rates, determined the rates were appropriate based on its finding that they were reasonable in light of the judge's familiarity with the market rate, the authorities, and the affidavits. The Tenth Circuit found that without a more detailed explanation, the District Court's award of hourly rates appeared arbitrary, and it remanded for the District Court to provide a clear, concise explanation for its determination. Here, the District Court similarly abused its discretion, and the fee award should be remanded for the District Court to provide a reasonably specific explanation for its hourly rate determination for each individual timekeeper. But this is not a case merely where the hourly rate determination would have been sufficient had the District Court provided just a little more explanation. The District Court also abused its discretion by awarding rates at the top of the market without any rational evidentiary basis for doing so. Can't you look at the result and see that? Apparently this is the first successful suit like this against the city. Doesn't that indicate the level of skill that might put these attorneys at the top of the hourly rate pyramid? Your Honor, I certainly think that is part of the calculation. But as this Court made clear in case, the Tenth Circuit has to base its hourly rate determination on what the market commands for attorneys of comparable skill and experience in civil rights litigation. And at least one Tenth Circuit panel in Powell found that affidavits and expert reports that were provided in support of an hourly rate were insufficient and conclusory because they didn't specifically address civil rights litigation or the attorney's civil rights litigation experience. Here, the affidavits and expert reports provided in support of Mr. Valadez's requested rates are similarly insufficient and inconclusory because they don't address civil rights litigation experience for three associates at all and they barely or they show just limited civil rights litigation experience for the shareholders who sought fees. For example, Mr. Valadez sought $375 per hour for three associate attorneys regardless of their civil rights litigation experience. None of these associates, based on the documentation provided by Mr. Valadez, had any civil rights litigation experience prior to working on this case. And the case law cited by Mr. Valadez similarly does not support those rates. The cases cited by Mr. Valadez show that in 2018, an associate with five years of experience at Kilmer, Lane & Newman, a firm that specializes in civil rights litigation, was awarded $375 per hour. And that an associate with two years of experience at Kilmer, Lane & Newman was awarded $350 per hour. And in 2021, the cases cited by Mr. Valadez similarly show that an associate with approximately six years of experience at Kilmer, Lane & Newman was awarded $375 per hour. There's simply no rational evidentiary basis for the court to find that these associates who had never tried or practiced in civil rights litigation before should be awarded $375 per hour, the top market rates for civil rights litigators with much greater experience. So do you think that the experience has to be proven up for every single billing attorney in a case? I believe that is correct, Your Honor, yes. And I believe that comes from a case where the Tenth Circuit clearly stated that the hourly rates have to be determined based on the civil rights litigation experience of each attorney. Which case is that again? A case, Your Honor. Case v. Unified School District No. 233. Just give me the site. 157 F. 3rd, 1243, Your Honor. Okay, thank you. Here, as with associates, the same problem arises for the shareholders who sought fees. The case law cited by Mr. Valadez shows that in 2018, three partners at Kilmer, Lane & Newman were awarded either $590 per hour or $540 per hour. In finding that those rates were reasonable, the district court relied on evidence that Kilmer, Lane & Newman and its three partners have received repeated recognition as leaders in civil rights litigation and that they were among the most well-regarded and most sought-after attorneys in Colorado in the area of plaintiff civil rights. Given the civil rights experience of those partners and given their reputation and skill level, the court found that a rate at the higher end of the market was appropriate. Here, Mr. Valadez provided documentation which shows that the shareholders had only limited, if any, civil rights experience. Therefore, the court should remand the district court's fee award and direct the district court to make a specific hourly rate determination based on the civil rights litigation experience of each individual seeking fees and to provide a reasonably specific explanation of its reasoning for each of those determinations. Let me just ask a hypothetical here. If we were to reverse on the prior case, would this all be premature? Because then you'd still have attorney fees ongoing and the case isn't final. And if that were the case, do we just get rid of this entire attorney fee case as premature at this point? Your Honor, I don't think the entire case would be premature. If this court were to reverse on the merits appeal, I think that would give it an independent reason for vacating and remanding the district court's fee award necessarily. Usually you don't award attorney fees until you know what the final outcome is. And if, in fact, we don't know the final outcome, it's pretty hard to know just how successful these attorneys were, whether it was the first big verdict against Denver on this kind of a claim or not. Yes, Your Honor. I think the changed level of the success that would occur if this court were to reverse on the merits appeal would necessitate the court remanding for the district court to reconsider. At that point, we could say, I suppose in our remand, that we have questions about the attorney fee calculation and we think that the precision was not sufficient and we'll hope that that will be corrected the next time around.  I do think that is likely to happen. I do think also that if the court doesn't retain jurisdiction over these other issues and flaws with the district court's order, we're likely to be back in the same position. And just for judicial economy, I think it is appropriate for the court to retain jurisdiction to discuss  Counsel, could I just ask you to clarify one aspect of your argument? Your briefing actually starts off with the fact that the court did a 12.5% reduction. And are you arguing that the percentage reduction was not an appropriate way in which to set the ultimate attorney fee? Yes, Your Honor. I believe the Tenth Circuit has made clear on numerous occasions that in order to determine a reasonable attorney fee, the district court must engage in a lodestar analysis. And in doing so, it must determine the reasonable hourly rates for each individual timekeeper. And it must determine the reasonable number of hours expended and multiply those figures together to come to a lodestar figure. That doesn't necessarily mean that the lodestar can't be adjusted to account for other factors. Well, isn't that what the court did? It started out with a lodestar proposal by the plaintiffs. So it wasn't that there was no lodestar analysis at all. It took the lodestar and did a percentage reduction. Are you saying that that was error to do it that way? Yes, Your Honor. I believe it was. Hasn't the Supreme Court said that courts may adjust by percentages? Hensley v. Eckerhart? Your Honor, Hensley does not stand for the proposition that the district court can skip over the lodestar analysis completely. Well, did it? Did it skip over? It isn't that it didn't have lodestar on the table. Yes, Your Honor. It certainly started with lodestar analysis by determining reasonable hourly rates. However, it then skipped over the reasonable number of hours determination. Well, I understand that. That's what you've been arguing up to this point. But let's suppose that it did the analysis on market rates and experience and all the rest. Are you saying that a percentage reduction is error if that happens? Because it seems like your argument really comes down to your experience of counsel and the market rate, not so much the percentage reduction. Your Honor, I think in this case the percentage reduction was an error. The district court, of course, can make a percentage reduction to the number of hours assuming there is sufficient justification for doing so. Here, the court made a couple errors. First, it conflated its reductions that it determined were necessary with what appears to be an enhancement or an offset for the exceptional results at trial by Mr. Valdez. But even assuming that a percentage reduction just accounted for the reasonable number of hours and we can assume that the district court determined the reasonable number of hours was 12.5% less than the total fee award requested, it still abused its discretion by failing to provide a reasonably specific explanation for each of its reductions that it determined were necessary. For instance, the district court explicitly found that some of the timekeepers failed to substantiate their claims for fees. However, the district court did not identify those timekeepers and it did not identify the number of hours it was reducing for those timekeepers. Let me interrupt you for a minute because I want to make sure I understand what your argument is. There are two components to the Lodestar calculation. One is reasonable hourly rates. The other is reasonable number of hours by each of the attorneys. With respect to reasonable rates, that was done in accordance with the Lodestar format. You just dispute the determination of the individual hourly rates. But what you're saying was missing, as I'm understanding you, from the Lodestar calculation is there was never any findings on how many hours, reasonable hours each of the attorneys devoted to the case. Am I right about that? Yes, Your Honor. That is definitely part of our argument. And it is, I think, a dispositive part of the argument. Not just the number of hours, but the rates, whether the individual rates of each of the individual attorneys was reasonable. That was never calculated on an attorney-by-attorney basis either. It was not, Your Honor. And you're saying it should be. I am, Your Honor, yes. You're saying it has to be. I believe that is correct under the Tenth Circuit precedent, Your Honor. Briefly, the district court, in addition to the failing to calculate the Lodestar appropriately, the district court further abused its discretion when it determined Mr. Valdez failed to substantiate his claims for costs, but nevertheless awarded 50% of those costs. Because the district court found that Mr. Valdez failed to substantiate any of his costs, this court should vacate the cost award and direct the court. But I thought there was no dispute about the deposition costs, which exceeded the amount that the district court awarded. So how are you harmed there? Your Honor, the district court specifically found that Mr. Valdez failed to substantiate any of his costs. If the district court determined that he should have been able to recover his costs for depositions because he substantiated them, we'd be having a different conversation. But the district court failed to provide any sort of reasonably specific explanation for why it awarded any costs whatsoever. And so I believe this court should vacate the cost award and direct the district court to award no costs to Mr. Valdez based on its findings. Thank you, Your Honor. Good morning, Your Honors. My name is Jeff Pagliuca. I was one of the trial lawyers in this case for Mr. Valdez. And I appear here representing Mr. Valdez on appeal. I want to start with the trial court, Judge Martinez, who presided over the majority of the pretrial matters in this case, observed the papers, observed the work done by counsel, and presided over the nine-day jury trial. Judge Martinez is, as this court knows, a meticulous judge who carefully reviews all of the paper in front of him, including fee applications. He is meticulous, and some might call him, not me, nitpicky about these things. Does his reputation excuse not being specific in his order? And I think, Your Honor, there's, I believe, a mischaracterization of what Judge Martinez considered both and what he relied on in coming up with his order and the manner in which he did it. So there was initially a 143-page fee application submitted to Judge Martinez. And the city only talks about portions of that fee application. So first, let me go through that fee application. It included two affidavits, one from myself and one from an independent expert, Ben Lebsack, who is a civil rights lawyer and who evaluated all of the fees and costs in this and submitted an affidavit having reviewed all of that information, opining that the total number of hours was reasonable and the rates were reasonable. So Judge Martinez, in addition to all of his experience, had two affidavits, one from myself and one from Mr. Lebsack, affirming the reasonableness of the rates and the hours. In addition, there were two surveys that are nationally recognized that were submitted in support of the fees and the hours in particular. These billing surveys are also attached to this fee application. There's detailed explanation of all of the hours that were worked in the case. There are literally about 80 pages of detailed billing that was submitted to Judge Martinez that one could look through and say, yes, here are all the tasks that were done, here's how long it took, and I find that these are reasonable or not reasonable. Same with the costs. So all of that was in front of Judge Martinez. It was him with hours, not with the hourly rate of the individual. I will get to the hourly rate, Your Honor. First of all, the affidavits support the rates. And let me jump to the hourly rates since that seems to be a question. First, we explained to Judge Martinez that the hourly rates that had more informant are set on a yearly basis after a review of comparable experienced lawyers in the Denver community. That's number one. And that's important because it wasn't simply a we're going to pick this number out of thin air, having won the case, and now we're going to jack our rates up to get a bigger fee award. These are our normal hourly rates that are calculated every year. Those rates are supported by Mr. Lipschitz. How many clients do you charge an hourly rate to? All of our clients. It's not done on contingency fees? Well, except for the contingency fee cases. But the hourly rate is the same rate that we drop into the contingency fee match. And what percentage of your work is? Contingency? Clients that come in, it's not contingent. This is the hourly rate we're going to charge you. I'd say it's likely 80% of our work is hourly rate work, and those are the rates that we charge. I think there's also, well, and Mr. Lebsack supported those rates, as well as other district court findings in the United States' report for the District of Colorado, support all of those hourly rates. I take some exception to the notion that there is a category of lawyers, the quote-unquote experienced civil rights litigators. Hadmore Informant's been defending people's civil rights for almost 50 years now. I've been defending people's civil rights for almost 40, well, more than 40 years now, and Ms. Menninger has been defending people's civil rights for more than 20 years now. And the case law talks about civil rights lawyers or other comparable commercial or other litigation. And we view ourselves, frankly, as trial lawyers and as experienced trial lawyers who are competent to handle this type of case and other cases and are as good or better than anybody else that's going to try these cases, as Judge Martinez so found. And I would note that in terms of the rates, we are charging lower rates than other lawyers in Denver. Miller, Kilmer, Lane, for example, their rates are higher than the rates that were charged in this case. So Judge Martinez understood all of that, had ample evidence before him to make those decisions, and made those decisions in addition to the 20 pages of reply brief that went through all of the objections made by the city and answered those objections. Judge Martinez had that information before him. I think the other thing that is important for the court to focus on is this notion that there had to be a lodestar analysis done by Judge Martinez. That is, I'm going to find a reasonable amount of time and times that with the reasonable rate. The city asked him, urged him not to do that in their briefing. And it is, I think, misleading to say that Judge Martinez erred after being asked by the city to apply a percentage reduction in the bills. And I will just point the court to the city's argument. First, at Appendix 331. Quote, the court should exercise its discretion to make percentage-based reductions to the fee request. Quote, at 336, there should be a blanket 15% reduction for what the city was describing as a block billing. Quote, the court need not parse counsel's block bill timesheets at 336. Quote, the court has broad discretion to further reduce Mr. Valdez's fee request at 337. The city then goes on to suggest at 337 that 25% should be deducted in additional to account for work done on non-compensable claims. Then the city goes on to ask for another 10% reduction to factor to account for the failing of billing judgment, again at 337. So the city has abandoned at the trial level this lodestar approach and has urged Judge Martinez to adopt this percentage reduction approach, which is an accepted approach among many courts to come up with what is a reasonable fee. That seems to be what Judge Martinez did. Is it consistent with lodestar? I mean, I thought that you started with lodestar, but you always, even if it's not inconsistent with lodestar, you always then can step back and say, are there other factors that then should lead to either a reduction or an increase? I think Hensley, for example, supports my position, Your Honor, which is that there is no talismanic way to make this calculation. Hensley and other cases following Hensley say the court can do what the court wants to do as long as there's a reasonable explanation for what the court did. And here, the court gave a reasonable explanation based on ample evidence of the record. And that reasonable explanation took into account all of the objections made by the city, and the court decided to follow the city's urging and do a percentage-based reduction of 12.5 percent as opposed to the 50 percent that the city was arguing. Had the court done what I would call a traditional lodestar analysis, frankly, we would have ended up with more money here, and the city benefited from this argument. Counsel, could you respond to the city's argument that the district court failed to address the rates for certain timekeepers? I think that was the word used. I don't know if it was attorneys or others. So the majority of the 12 timekeepers are staff individuals, and the city objected to six of those individuals because we did not include in the original application detailed bios of those staff people. So it was staff people and one lawyer. The court factored that in, and the court said, I'm not going to award any amount for those in part of the court's 12.5 percent reduction. I don't believe that the court needs to make particularized findings as to each individual timekeeper. I'm aware of no case that says that. The court has to determine that the rates are reasonable, and the court did so in this case. I mean, the court determined that the rates were reasonable based on the information that the court had before it, factored all of the objections into the percentage reduction, and that's how we end up with a reasonable fee here. Let me just turn to one other related. Didn't the city also argue that the rates used for the less experienced attorneys, less experienced associates, were too high? How would you respond on that? Yeah, so he's talking first about Jamie Hubbard, who clerked in the United States District Court for the District of Colorado and other federal courts prior to joining Haddon-Morgan Foreman. Her bio is included in the fee submission. So she was a lawyer of roughly, I think, 10 years or 13 years of experience prior to joining the firm, had substantial experience researching and writing, and had substantial experience with these kinds of claims. So I think that it is a mischaracterization. The other lawyer they're being critical of is David Maxted, who has very impressive credentials and background, was a public defender for Defender Services in D.C., came to Colorado, and began working on this case. I would note that— Now, what you're telling us about these two attorneys is in the record? Yes, absolutely. In the 143-page fee submission to Judge Martinez. And so all of that is included. And I think I would also note that we started this case in 2015. So by the time this case went to trial, these lawyers who had been working on the case had substantial experience throughout the course of these proceedings and other civil litigation. So it's really inaccurate to sort of pigeonhole these folks as, you know, junior young associates, because they're not. They were lawyers with substantial experience before joining Morgan & Foreman, both in trials and writing, and all the things that we need for these kinds of cases. Let me turn briefly to the cost issue, which is a bit muddy in the briefing, and I think I need to clear this up. We asked for $36,399.19 in costs. The city only objected to $15,540.72 of that amount. And that's in the record at Appendix 342. That's their specific number objection to the cost that we asked for. So that left, if my math is right, $20,858.47 that was not objected to, not at all. Judge Martinez didn't give us that amount. Judge Martinez gave us $18,199.60. So they got more deductions than they asked for. And the category that was not at issue were the expert fees for Chief Dan Montgomery, and those totaled some $26,000, give or take. And so I don't understand what they're complaining about with regard to the cost, since Judge Martinez gave them more than they asked for. Finally, I'll address the point of what happens if the court were to reverse the judgment against the city. We still have the judgment, the final judgment, non-appealed against Sergeant Motika. We were awarded $181,000 on that judgment, which the city paid. All of the facts that relate and all of the discovery and all of the work that went into litigating this case against Sergeant Motika would be necessary, whether or not the city was a party to this case or not. And so if the court were to reverse that judgment, it really has no substantial impact on the fee award here, because all of the core facts are identical. The trial would not have taken any longer. The discovery would not have been any different. It's essentially the same case, because we're proving the constitutional violation of Sergeant Motika, for which the city is liable under the municipal liability theory. What would you say, though, counsel, that the municipal liability issues required some separate work apart from the individual liability issues? Certainly. But yes, absolutely, Your Honor. A good example would be if there were no municipal liability claim, perhaps the expert, Chief Dan Montgomery, may not have testified at trial. But that's a very de minimis part of this case and I think would be accounted for in the court's 12.5% reduction, even if the case were remanded. Thank you. I see my time is almost up. If you don't have any other questions, I am done. Thank you, counsel. Thank you, Your Honors. Case is submitted. You're actually excused this time.